J-S21004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:       PENNSYLVANIA
:
v. :
:
:
:
MAXAMILLIAN JOHNSON :
:
Appellant : No. 1821 EDA 2023

Appeal from the Judgment of Sentence Entered February 3, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003232-2019

BEFORE: LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED NOVEMBER 14, 2024**

Maxamillian Johnson appeals from the judgment of sentence, entered in the Court of Common Pleas of Delaware County, following his conviction of two counts of robbery,[1] one count of burglary,[2] and five counts of conspiracy.[3] After our review, we vacate and remand for resentencing.

The trial court set forth the underlying facts as follows:

On August 24, 2018, at approximately 12:45 a.m., the Clifton Heights Police Department was dispatched to Willows Apartment Complex[,] located at 426 S. Springfield Road, in Clifton Heights, Delaware County, for a possible robbery in progress. The attack was reported by the neighbor across the hall of the apartment complex, who reported two black males, one having a long gun, wearing a black t-shirt and having a bald head. Victim Jonathan

---

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii); *id.* at 3701(a)(1)(iv).

[2] *Id.* at § 3502(a)(1).

[3] *Id.* at §§ 903, 2702 (F1); *id.* at §§ 903, 2702 (F2); *id.* at §§ 903, 3701 (F1); *id.* at §§ 903, 3701 (F2); *id.* at §§ 903, 3502 (F1).

Peters [] chose to ignore the first knock he heard on his apartment door. Peters, his wife, Amanda Haley, and their two children occupied Apartment E-10. His children were seven and ten-years-old at the time. The knocking persisted, so he checked the door, opening it slightly. An unidentified man asked to purchase marijuana, and when Peters refused, [Johnson] and [his] co-defendant came into Peters' sight. Co-defendant had a revolver and [Johnson] had a long gun, which he used to prevent Peters from closing the door. As Peters attempted to close the door, a struggle occurred and co-defendant was able to wedge his hand in the crack of the door and struck Peters on the head with his revolver. As Peters continued trying to push the door closed, co-defendant again wedged his hand through the crack of the door, shooting Peters in the shoulder. Peters was unable to defend the door any longer. As co-defendant kept watch with his revolver in the doorway of the lighted apartment, [Johnson] entered the apartment, taking Peters' firearm and two jars of marijuana.

While police were [en] route, the incident was upgraded to a shooting. Upon arrival, officers observed a male subject fleeing from the building complex through the parking lot. Officers began a chase and ultimately apprehended co-defendant. Two glass jars of marijuana, a long gun[,] and a handgun were located between buildings H and F, following the path police observed co-defendant take into a nearby wooded area. [Johnson] was apprehended at a later time.

While having his wounds treated in the back of an ambulance, Peters was asked if he would be able to identify his attackers if he saw them. When Peters answered in the affirmative, they presented co-defendant, whom Peters positively identified. Peters was hospitalized for about three days and required surgery for a bullet wound and stitches on his head.

On the same night, Sergeant John Millison [] of the Upper Darby Police Department responded to the area of 69th Street and Chestnut Street in Upper Darby, Pennsylvania. He received a call from a fellow officer that a vehicle had become stuck in freshly poured cement. The female driver, identified as Taleah Cooper, was arrested for false identification to law enforcement. Her address was listed as 426 S. Springfield Road, Apartment E-9, Clifton Heights, Pennsylvania. Police checked the Pennsylvania Department of Transportation Vehicle Record Abstract and observed that the car was registered to [Johnson]. Due to the fact that [] Cooper was taken into custody, that she was not the

registered owner of the vehicle[,] and that the vehicle was impounded by [the] Upper Darby Police Department, the vehicle was towed and searched pursuant to the department's inventory search policy. While conducting the inventory search, police located a box of Remington .357 caliber ammunition. Cooper lived in the same apartment complex as Peters, at apartment E-9, and purchased marijuana from Peters on several occasions. Peters sold marijuana to several individuals in the complex, as he was a known supplier of marijuana.

Special Agent William Shute of the Federal Bureau of Investigation[] testified at trial and was recognized as an expert in Historical Cell Site Location and Analysis. He described both how cell phone location is tracked through cellular towers and how law enforcement interprets that data.

On June 25, 2019, the Commonwealth filed charges against Johnson [and, on December 15, 2022,] the jury convicted [Johnson] of robbery: threat of immediate serious bodily injury; robbery: inflict or threaten serious bodily injury; burglary; **two counts of criminal conspiracy to [commit] aggravated assault; two counts of criminal conspiracy to [commit] robbery; and conspiracy to [commit] burglary.** [On February 3, 2023, Johnson] was sentenced to an aggregate sentence of [324 to 648] months['] [or 27-54 years'] incarceration in a state correctional facility, plus 10 years['] consecutive probation.[4]

---

[4] The court sentenced Johnson as follows:

Count 9: **robbery, threaten immediate serious injury (F1)**, 18 Pa.C.S.A. § 3701(a)(1)(ii) – 300 to 600 months' confinement.

Count 13: **robbery, inflict or threaten bodily injury (F2)**, 18 Pa.C.S.A. § 3701(a)(1)(iv) – 24 to 48 months' confinement, **consecutive to count 9**.

Count 17: burglary (F1), 18 Pa.C.S.A. § 3501(a)(1) – 300 to 600 months' confinement, concurrent with count 9.

Count 29: conspiracy to aggravated assault (F1), 18 Pa.C.S.A. §§ 903, 2072 – 300 to 600 months' confinement, concurrent with counts 9 and 17.

*(Footnote Continued Next Page)*

Trial Court Opinion, 10/27/23, at 2-6 (footnotes omitted) (emphasis added).

Johnson filed a post-sentence motion, which was denied on June 7, 2023.[5] This timely appeal followed. Both Johnson and the trial court have complied with Pa.R.A.P. 1925. Johnson raises the following issues for review:

1. Whether the evidence is legally []sufficient to sustain five separate conspiracy convictions, because the prosecution alleged only one agreement with multiple objectives, and each underlying offense was part of the same purported continuous relationship?

2. Whether the judgment of sentence is illegal, since the court improperly imposed mandatory fifty-year third-strike penalties for counts nine, seventeen, and twenty-nine based on prior convictions that occurred on the same date, and

_____

Count 30: conspiracy to commit aggravated assault (F2), 18 Pa.C.S.A. §§ 903, 2702 – 27 to 54 months' confinement, concurrent with counts 9, 13, 17, and 29.

Count 33: conspiracy to commit robbery (F1), 18 Pa.C.S.A. § 903, 3701 – 10 years' probation, consecutive to count 9.

Count 37: conspiracy to commit robbery (F2), 18 Pa.C.S.A. § 903, 3701 – 2 years' probation, concurrent with count 33.

Count 45: conspiracy to commit burglary (F1) – 10 years' probation, concurrent with counts 33 and 37.

[5] On February 13, 2023, Johnson's counsel timely filed a post-sentence motion. The trial court docket entry on May 3, 2023 states: "Defendant's *Pro Se* Notice Of Appeal To Superior Court." On June 5, 2023, the trial court docket also states, "Defendant's *Pro Se* Notice Of Appeal To Superior Court." On June 7, 2023, the court entered an order denying the post-sentence motion. On July 5, 2023, Johnson's counsel timely filed the instant notice of appeal from the judgment of sentence. It appears the trial court failed to forward the premature May 3, 2023, and June 5, 2023, *pro se* notices of appeal to this Court for docketing.

because two separate robbery subsections (counts nine and thirteen) should have merged?

Appellant's Brief, at 6.

In his first issue, Johnson argues that the prosecution established, at most, a single continuous agreement with multiple criminal objectives and, therefore, the multiple sentences on the conspiracy convictions are illegal. We agree.

Our standard of review is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the evidence is sufficient to support Johnson's five conspiracy convictions. ***See Commonwealth v. Bullick***, 830 A.2d 998, 1000 (Pa. Super. 2003). Criminal conspiracy is defined as:

> **(a) Definition of conspiracy**.-- A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a)(1). A conspiracy is given the same grade and degree as the most serious crime that is an object of the conspiracy. 18 Pa.C.S.A. § 905(a). To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: (1) entered into an agreement to commit or aid in an unlawful act with another person or persons; (2) with a shared criminal intent; and (3) an overt act was done in furtherance of the conspiracy. ***Commonwealth v. Roche***, 153 A.3d 1063, 1071 (Pa. Super. 2017);

*Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000); 18 Pa.C.S.A. § 903.

For Johnson "to be convicted of [five] counts of conspiracy, there must be separate agreements, or separate conspiratorial relationships, to support each conviction." *Commonwealth v. Barnes*, 871 A.2d 812, 820 (Pa. Super. 2005). Johnson contends that since the evidence supported conviction on just one conspiracy, the judgment of sentence is legal as to just one conspiracy conviction and the sentence as rendered violates 18 Pa.C.S.A. § 903(c) (stating "if a person conspires to commit a number of crimes, he is guilty of **only one** conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.") (emphasis added). *See* Appellant's Brief, at 12.

In determining whether a single conspiracy or multiple conspiracies have been established, we consider several relevant factors:

> The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue . . . are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

*Commonwealth v. Davis*, 704 A.2d 650, 654 (Pa. Super. 1997) (citation omitted).

In **Commonwealth v. Rivera**, 238 A.3d 482, 503 (Pa. Super. 2020), this Court was presented with a similar issue. Rivera and his co-defendants agreed to rob their victim at gunpoint, and that agreement encompassed a plan to break into the victim's home and take his money and drugs at gunpoint. The victim was shot and killed during the robbery. Rivera was convicted of second-degree murder, robbery, burglary, and conspiracy to commit second-degree murder, robbery, and burglary. On appeal, this Court *sua sponte* addressed the legality of Rivera's sentence on multiple conspiracy convictions. We stated:

> The agreement among [Rivera] and his co-defendants to rob Victim at gunpoint encompassed their plan to break into Victim's home (burglary) and take his money and drugs at gunpoint (robbery). The homicide (second-degree murder) that occurred during the robbery was in furtherance of the single conspiratorial goal: to rob Victim. As such, under subsection 903(c), [Rivera] only could be found guilty of conspiracy to commit robbery, "that crime being the underlying foundation of the agreement upon which the conspiracy charges were based."

**Rivera**, 283 A.3d at 504 (quoting **Barnes**, 871 A.2d at 821).

Applying the factors set forth in **Davis** to the instant case, we conclude that the conduct of Johnson and his co-defendant did not result from five separate conspiracies. Instead, their conduct was the result of a "continuous conspiratorial relationship." 18 Pa.C.S.A. § 903(c).

Johnson and his armed co-defendant forcibly entered Peters' apartment (burglary), and, while a struggle ensued, co-defendant struck Peters with his gun and shot him in the shoulder (aggravated assault). As co-defendant kept

watch in the doorway, Johnson entered the apartment and took Peters' firearm and two jars of marijuana (robbery). The offenses were committed by the same two co-conspirators, in the same location, within a span of minutes, and all with the common conspiratorial goal of forcibly robbing Peters. The aggravated assault that occurred during the burglary was in furtherance of that goal. **See** 18 Pa.C.S.A. § 3701(a)(1)(iv) ("A person is guilty of robbery if, in the course of committing a theft, he: . . . (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury[.]"); **Davis**, **supra**.

As the Commonwealth observes, there is no meaningful distinction between the case before us and **Rivera**. Here, as in **Rivera**, pursuant to subsection 903(c), Johnson only could be found guilty of conspiracy to commit robbery, "that crime being the underlying foundation of the agreement upon which the conspiracy charges were based." **Rivera**, 238 A.3d at 504. Accordingly, Johnson should have been convicted only of a single count conspiracy to commit robbery and the remaining four conspiracy convictions must be vacated. "[M]ultiple sentences under these circumstances are explicitly precluded by statute." **Davis**, 704 A.2d at 655, citing 18 Pa.C.S.A. § 903(c).[6]

Next, Johnson argues that consecutive sentences for his two robbery convictions are illegal because the court (1) improperly applied the third-strike

_____

[6] We note that the Commonwealth does not dispute that Johnson should have been convicted of only count of conspiracy. **See** Commonwealth's Brief, at 6.

provision and (2) imposed separate sentences for the two counts of robbery, which should have merged. *See supra* n.2. Specifically, Johnson claims the predicate convictions occurred on the same date and at the same plea proceedings, are not "sequential," and he was never afforded an adequate "intervening opportunity to reform before facing third[-]offense consequences." *See* Appellant's Brief, at 12. Additionally, Johnson contends his two robbery convictions involved the same complainant, arose from the same facts, and all the elements of one offense are included in the other. He suggests, therefore, that the convictions should have merged for sentencing purposes. *Id.*; *see also* Counts 9 and 13, *supra* n.4.

Johnson argues the court's imposition of mandatory 25-year sentences[7] on Count 9 (robbery- 18 Pa.C.S.A. § 3701(a)(1)(ii) (F1)), Count 17 (burglary – 18 Pa.C.S.A. § 3501(a)(1) (F1)), and Count 29 (conspiracy to commit aggravated assault, 18 Pa.C.S.A. §§ 903, 2072 (F1)), is illegal because the third-strike penalties are based upon prior convictions that occurred on the same date.[8] Appellant's Brief, at 17. Johnson contends, therefore, that he does not have two qualifying strikes and that he "unjustly endures enlarged

---

[7] We note that Johnson argues the court imposed "mandatory fifty-year sentences[,]" *see* Appellant Brief, at 17. The court imposed sentences of 25 to 50 years.

[8] The sentence at Count 9 was 25-50 years' imprisonment, and the 25-to-50-year sentence at Count 17 was concurrent with that of Count 9, and the 25-to-50-year sentence at Count 29 was concurrent with the sentences at Counts 9 and 17.

- 9 -

third-strike consequences without having ever faced second offense punishment." Appellant's Brief, at 19, citing **Commonwealth v. Shiffler**, 879 A.32 185, 195-96 (Pa. 2005).[9]

The three strikes law sets forth the mandatory minimum sentences to be imposed upon certain repeat offenders as follows:

**§ 9714. Sentences for second and subsequent offenses.**

**(a) Mandatory sentence**.--

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence,

---

[9] The Commonwealth suggests that, despite the fact that this issue implicates the legality of the sentence and cannot be waived, **see Commonwealth v. Armolt**, 294 A.3d 364, 376 (Pa. 2023), the Pennsylvania Supreme Court's decision in **Commonwealth v. Bradley**, 834 A.2d 1127 (Pa. 2003), "seemingly carved out an exception to that rule." **See** Commonwealth's Brief, at 9. In **Bradley**, our Supreme Court addressed the issue of whether the defendant was properly sentenced as a third-strike offender. The defendant claimed the sentencing court erred in sentencing him as a third-strike offender because his two prior robberies constituted a single criminal transaction. 834 A.2d at 1130. The Court stated: "Looking at the temporal and logical relationship between the two 1991 robbery convictions, we agree with the courts below that two separate criminal transactions were involved." **Id.** at 1134. Thus, the Court held the robberies were "separate criminal transactions" for purposes of the three-strikes provision. **Id.** What the Court found waived was defendant's "recidivist philosophy-based argument." **Id.** Defendant neither raised that argument before the trial court or this Court and, therefore, the Supreme Court found it waived. However, in the interest of thoroughness, and because the Commonwealth acknowledges Johnson should have received a second-strike sentence, **see** 42 Pa.C.S.A. § 9714(a)(1), we will not find Johnson waived his argument based on recidivist philosophy for failure to present it to the trial court.

the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa.C.S.A. § 9714(a). A "crime of violence" includes, *inter alia*, aggravated assault as defined in 18 Pa.C.S.A. § 2702(a)(1) or (2), and robbery as defined in 18 Pa.C.S.A. § 3701(a)(1)(i), (ii), or (iii). **See** 42 Pa.C.S.A. § 9714(g).

In the instant case, the court stated on the record at sentencing that Johnson had entered guilty pleas to two robbery offenses in 2009. The robbery convictions occurred on the same date and he received concurrent sentences. **See** N.T. Sentencing, 2/3/23, at 2, 7-8. In **Shiffler**, our Supreme Court determined that section 9714 reflects a "recidivist philosophy" and "should be construed to allow for heightened punishment for repeat offenders only where their convictions for crimes of violence, and corresponding terms of incarceration, are sequential and each is separated by an intervening opportunity to reform." **Shiffler**, 879 A.2d at 186. There, Shiffler was charged with burglary, aggravated assault, theft, and resisting arrest, and on June 25, 2002, entered an open guilty plea to those charges. **Shiffler**, 879

- 11 -

A.2d at 187. At sentencing, the Commonwealth introduced evidence that on May 12, 1997, Shiffler had entered guilty pleas to three separate charges of burglary, and, thus, the Commonwealth sought a third-strike sentence under section 9714(a)(2) of the Sentencing Code. Shiffler argued his sentences for those prior convictions were "totally concurrent" and that, therefore, the offenses "should be considered as one conviction" for purposes of section 9714 and that he was only a second-time offender, pursuant to subsection (a)(1) of the statute. ***Id.***

Our Supreme Court discussed recidivist philosophy and held it improper to sentence a person as a third-strike offender **when "he has not ever been—nor could he have been—sentenced as a second-strike offender**[.]" ***Id.*** at 194 (emphasis added). The Court explained:

> As to the recidivist philosophy, this and other Pennsylvania appellate courts have repeatedly recognized that, "the point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline." Particularly salient here is the implicit link between enhanced punishment and behavioral reform, and the notion that the former should correspondingly increase along with a defendant's foregone opportunities for the latter. Any other conception would ignore the rationale underlying the recidivist philosophy, i.e., that the most culpable defendant is "one, who after being reproved, 'still hardeneth his neck'." Just as the second-time offender enhancement under subsection (a)(1) is meant to punish a defendant more severely when that defendant has offended before and has been afforded an opportunity to reform, so too is the third-time offender enhancement under subsection (a)(2), which increases the minimum punishment to twenty-five years, obviously meant to punish a defendant more severely when he has already foregone two opportunities to reform himself. The generally recognized purpose of such graduated sentencing laws is to punish offenses

> more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law.

*Id.* at 195 (citations omitted). The Court concluded that the three strikes law under 42 Pa.C.S.A. § 9714(a)(2), "reflects a 'recidivist philosophy' and should be construed to allow for heightened punishment for repeat offenders only where their convictions for crimes of violence, and corresponding terms of incarceration, are sequential and each is separated by an intervening opportunity to reform." *Id.* at 186.

Here, like in *Shiffler*, Johnson had received concurrent sentences for prior crimes of violence to which he had entered guilty pleas on the same day. Further, like in *Shiffler*, Johnson's prior robberies were not "separated by an intervening opportunity to reform[.]" *Id.* We, conclude, therefore, that the court should have sentenced Johnson as a second-strike offender under subsection 9714(a)(1).

Finally, Johnson argues the sentencing court erred in imposing consecutive sentences on two robbery charges (Count 9 and Count 13), and that those convictions should have merged for sentencing.

"A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law." *Commonwealth v. Orie*, 88 A.3d 983, 1020 (Pa. Super. 2014). Accordingly, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Brougher*, 978 A.2d 373, 377 (Pa. Super. 2009).

Our legislature has addressed the merger of sentences in the following statute:

**§ 9765. Merger of sentences**

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. Thus, merger is appropriate only when (1) the crimes arise from a single criminal act, and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other. **Commonwealth v. Kimmel**, 125 A.3d 1272, 1276 (Pa. Super. 2015) (en banc). **See also Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009). **Cf. Commonwealth v. Glass**, 50 A.3d 720, 731 (Pa. Super. 2012) (convictions for multiple counts of same crime do not merge where separate counts represent offenses against separate victims). Thus, the imposition of separate punishments for multiple convictions founded upon the same criminal act is only improper if all the statutory elements of one offense are included within the other. **See Kimmel**, 125 A.3d at 1276; 42 Pa.C.S.A. § 9765.

Here, it is clear that the crimes charged were based on the same facts. Therefore, whether the two offenses were greater and lesser-included offenses is determinative of whether the two robbery convictions should have merged for purposes of sentencing. We note that Johnson has cited to no legal

authority to support his claim that "the statutory elements coincide[.]" Appellant's Brief, at 20. His sole argument is that "the two subsections are differentiated only by the amount of force used during the commission of a theft[.]" *Id.* We disagree.

The Crimes Code defines the crime of robbery as follows:

(1) A person is guilty of robbery if, in the course of committing a theft, he: . . .

(ii) **threatens another with or intentionally puts him in fear of immediate serious bodily injury**;

* * *

(iv) **inflicts bodily injury upon another** or threatens another with or intentionally puts him in fear of immediate bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii)(iv) (emphasis added).

As the facts adduced at trial demonstrate, during the course of committing a theft, Johnson (1) threatened Peters with immediate, serious bodily injury, *see id.* at § 3701(a)(1)(ii), when he forced his entry in Peter's apartment, brandishing a long gun, and (2) inflicted bodily injury upon Peters, *see id.* at § 3701(a)(1)(iv), when his co-conspirator struck Peters on the head with a revolver and shot Peters in the shoulder, causing Peters to suffer injuries requiring surgery, stitches, and three days' hospitalization. *See Commonwealth v. Golphin*, 161 A.3d 1009, 1019 (Pa. Super. 2017) (defendant liable for overt acts committed in furtherance of conspiracy regardless of which conspirator committed act). We conclude that because each subsection of the robbery statute contains at least one element that the

other does not, i.e., threatening immediate serious bodily injury as compared with inflicting bodily injury, the second prong of section 9765 (requiring all elements be shared) cannot be met. Accordingly, Johnson's multiple counts of robbery do not merge in this case. *See Commonwealth v. Calhoun*, 53 A.3d 281, 287 (Pa. Super. 2012) (where sentences do not merge, defendant is not entitled to "volume discount" in being sentenced).

In light of the foregoing, we vacate Johnson's judgment of sentence, and we remand for resentencing. *See Commonwealth v. Ali*, 197 A.3d 742, 759 (Pa. Super. 2018) (where appellate court's dispositions upset trial court's original sentencing scheme, remand for new sentencing proceeding appropriate); *Commonwealth v. Williams*, 871 A.2d 254, 266 (Pa. Super. 2005) (if trial court errs in sentence on one count in multi-count case, all sentences for all counts will be vacated so court can restructure entire sentencing scheme).

Judgment of sentence vacated. Case remanded for resentencing in accordance with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2024

- 16 -